**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 22-cv-00541-MDB

Lorelle Thompson,

    Plaintiff,

v.

Ford Motor Company, a Delaware Company,

    Defendant.

---

**FORD'S MOTION TO ALTER OR AMEND THE JUDGMENT
UNDER F.R.C.P. 59(e)**

---

Defendant Ford Motor Company ("Ford") moves to amend the judgment entered in this matter under Fed. R. Civ. P. 59(e). Ford requests that the Court grant this motion to (i) correct the plain error in the failure to apply Colorado's statutory caps to Plaintiff's noneconomic and punitive damages awards; and (ii) prevent manifest injustice by rejecting or reducing the excessive and unsupported punitive damages award.

## CERTIFICATE OF CONFERRAL

Pursuant to D.C.COLO.LCivR 7.1, counsel for the parties met and conferred by telephone and email on May 13 and 14, 2024, concerning the relief requested in this Motion. Plaintiff agrees that the amount of non-economic damages should be reduced to the statutory cap, although the parties do not agree on the applicable statutory cap. Plaintiff opposes the reduction of the punitive damages award.

## INTRODUCTION

If Ford is afforded no other relief from the judgment here—and as detailed elsewhere, there is ample reason to overturn it entirely—the Court should, at the very least, amend the judgment to conform to Colorado's statutory dictates for personal-injury judgments and punitive damages. Among the damages awarded to Plaintiff were $4,000,000 in noneconomic damages and $45,000,000 in punitive damages. But both sets of damages are capped by statute: C.R.S. § 13-21-102.5(3)(a) for the noneconomic damages and C.R.S. § 13-21-102(1)(a) for punitive damages. The Court must apply these reductions. Beyond those reductions, however, this Court should exercise the discretion provided to it by the Colorado General Assembly to eliminate, or, at a minimum, dramatically scale-back the punitive damages award further below the statutory cap.

**LEGAL STANDARD**

"Rule [59(e)] was adopted to make clear that the district court possesses the power to rectify its own mistakes in the period immediately following the entry of judgment." *White v. N.H. Dep't of Emp. Sec.*, 455 U.S. 445, 450 (1982) (internal quotation marks omitted). "[I]n determining whether to grant or deny a Rule 59(e) motion to alter or amend the judgment, the district court is vested with considerable discretion," and it "may grant a motion to alter or amend the judgment where it is necessary to correct manifest errors of law." *Brown v. Presbyterian Healthcare Servs.*, 101 F.3d 1324, 1332 (10th Cir. 1996); *see also Servants of the Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000) (Rule 59(e) applies "to correct clear error or prevent manifest injustice.") (citations omitted).

**ARGUMENT**

The April 18, 2024, judgment cannot stand without considerable alteration. Mandatory statutory caps apply to automatically reduce the awards for noneconomic and punitive awards. *See* C.R.S. § 13-21-102.5(3)(a); C.R.S. § 13-21-102(1)(a). But the Court should not stop there. If anything remains of the jury's unsupported verdict after Ford's Rule 50(b) and Rule 59(a) motions (and nothing should), this Court should exercise the discretion reserved to it to eliminate or substantially reduce the punitive damages judgment. The punitive damages award cannot withstand scrutiny under the law or the record adduced. It rests on impermissible argument rather than any valid evidence. Rule 59(e) relief should be granted.

## I. This Court Should Amend its Judgment to Apply Colorado's Statutory Damages Caps

Colorado statutory law limits the amount of damages a personal-injury plaintiff can recover. This Court's April 18, 2024, judgment did not account for these mandatory limits and should be amended to conform to them.

### A. Plaintiff's Noneconomic Damages Should be Capped

The jury awarded Plaintiff $4,000,000 in noneconomic damages, Doc. 298, and the judgment entered by the Court on April 18, 2024 incorporated that full amount, *see* Doc. 300. But, as here, "[i]n any civil action other than medical malpractice actions in which damages for noneconomic loss or injury may be awarded, the total of such damages shall not exceed the sum of two hundred fifty thousand dollars," as "adjusted for inflation" by the Colorado Secretary of State. C.R.S. § 13-21-102.5(3)(a); *id.* § 13-21-102.5(3)(c)(I). Pursuant to the Secretary of State, for claims accruing prior to 2020 (such as Plaintiff's), that adjusted amount is $468,010. (Secretary of State Certification, attached as Exhibit A.). This cap is mandatory. *See Pearson v. Dist. Ct.*, 924 P.2d 512, 516-17 (Colo. 1996) (the term "shall not" constitutes a "mandatory command" by the legislature).

The Court therefore needs to cap Plaintiff's noneconomic damages award at $468,010. C.R.S. § 13-21-102.5(3)(a) (noneconomic damage awards "shall not" exceed $250,000, as adjusted for inflation); *see also, e.g.*, *Robinson v. Terwilleger*, No. 09-cv-02775-CMA-BNB, 2011 WL 1987619, at *4 (D. Colo. May 13, 2011) (citing CRS § 13-21-102.5(3)(a) and imposing $468,010 cap on noneconomic damages). Therefore, the Court should enter an amended judgment, reducing noneconomic damages by $3,531,990 to the statutory cap of

$468,010. This reduction brings total compensatory damages that Plaintiff can recover from $11,575,000 to $8,043,010.

### B. Plaintiff's Punitive Damages Should be Capped as Well

Plaintiff's punitive damage award should likewise be capped consistent with Colorado law. Punitive damages are creatures of statute in Colorado, and the relevant statute caps any punitive damages award at a one-to-one ratio with actual damages. C.R.S. § 13-21-102(1)(a); *Corbetta v. Albertson's, Inc.*, 975 P.2d 718, 721-23 (Colo. 1999) ("[T]he legislature sought to tie punitive damage awards to the amount of actual damages awarded . . . ."). Specifically, the statute mandates that "[t]he amount of such reasonable exemplary damages shall not exceed an amount which is equal to the amount of the actual damages awarded to the injured party." C.R.S. § 13-21-102(1)(a). In other words, a one-to-one ratio is the *maximum* amount of punitive damages that a court can award. *Lira v. Davis*, 832 P.2d 240, 243 (Colo. 1992). That accords with the statute's purpose "to limit excessive punitive damages awards" and "to restrict a party's punitive damages to an amount not in excess of actual damages." *Id.* at 246.

The jury's excessive $45 million award is nearly four times the amount the jury awarded for compensatory damages to Plaintiff—even before reducing non-economic damages to the cap. *See supra* at I.A. Colorado statutes lay out the order of operations for imposition of the cap. First, the Court determines the proper amount of "actual damages," which importantly is the amount of damages awarded a party *after* reductions pursuant to applicable statutory schemes, such as the capping of noneconomic damages. *Lira*, 832 P.2d at 245 ("[T]he term 'award' means a remedy recoverable in accordance with . . . the reduced compensatory amount." (internal quotation and citation omitted)); *Watson v. Dillion Cos.*, No. 08-cv-00091, 2013 WL 4547477, at *7-8 (D.

Colo. Aug. 28, 2013) (incorporating reduced noneconomic damages into one-to-one ratio for punitive damages). Next, the Court must reduce the punitive damages award to equal the amount of actual damages in accordance with C.R.S. § 13-21-102(1)(a). *See, e.g.*, *Palmer v. Diaz*, 214 P.3d 546, 555-56 (Colo. App. 2009) (reducing jury's award of $1,500,000 in punitive damages to the $300,000 awarded in actual damages); *Watson*, 2013 WL 4547477, at *7 (court "must reduce the jury's award of $5,000,000 in punitive damages against Defendant . . . to no greater than the amount of actual damages it owes.")

Under C.R.S.§ 13-21-102(1)(a) and *Lira*, 832 P.2d at 243, the maximum punitive damages award is an amount equal to Plaintiff's actual damages, after applying the cap to noneconomic damages as explained above.[1] This ceiling is not also a floor. The Court is not required to blindly enter a one-to-one actual to punitive damage award.

**II.     This Court Should use its Discretion to Disallow or Substantially Reduce the Punitive Damages Award from its Statutory Maximum**

Even beyond the statutorily mandated reductions, Colorado's statute provides this Court the ability to further reduce or even disallow altogether the jury's punitive damage award. *See* C.R.S. § 13-21-102(2). The purpose of C.R.S. § 13-21-102 is to limit excessive punitive damages awards, and to that end, it imbues the court with significant discretion to "reduce or

---

[1] "Actual damages" also includes statutorily mandated prejudgment interest on the compensatory award. *Vickery v. Evans*, 266 P.3d 390, 391 (Colo. 2011). The Court did not award prejudgment interest in the judgment, but if it alters the judgment to include that amount, it would be part of "actual damages" to which the one-to-one ratio applies. Because interest started accruing on December 27, 2016, inclusion of prejudgment interest greatly increases Plaintiff's compensatory award, such that with the cap applied, the punitive damages would still be excessive and should be reduced or eliminated for the reasons discussed below.

disallow" an award of punitive damages in its "supervisory role over a jury's exemplary damages award." *See Sky Fun 1 v. Schuttloffel*, 27 P.3d 361, 370 (Colo. 2001).

Section 13-21-102 calls for a court to further reduce or eliminate punitive damages where (a) the deterrent effect of the damages has been accomplished; (b) the conduct which resulted in the award has ceased; or (c) the purpose of such damages has otherwise been served. C.R.S. § 13-21-102(2). The statutory factors are in line with common-law principles that compensatory damages also serve to deter. *See, e.g.*, *Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 307 (1986) ("Deterrence . . . operates through the mechanism of damages that are compensatory . . . ."). And the touchstone inquiry is "whether a particular award is greater than reasonably necessary . . . ." *See Pac. Mut. Life Ins. Co. v. Haslip*, 499 U.S. 1, 22 (1991). In making this inquiry, a court should bear in mind that the only conduct for which a defendant can be punished is that which "harmed the plaintiff, not . . . the merits of other parties' hypothetical claims . . . ." *See State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 423 (2003); *see also Smith v. Wade*, 461 U.S. 30, 52 (1982) (Punitive damages "are never awarded as of right . . . .").

Ford has explained why Plaintiff did not meet her evidentiary burden for punitive damages, but those same evidentiary deficits highlight that all three factors set forth in C.R.S. § 13-21-102(2) militate against awarding any amount of punitive damages. (*See* Ford's Rule 50(b) Motion.). Briefly though, Plaintiff's punitive damages claim hung on Ford's purported failure to rectify the shift tube defect despite purported knowledge of it and unverified customer complaints for which there was *no* evidence presented that any were remotely like Plaintiff's— *e.g.*, that the vehicle went to "false park" and subsequently self-shifted to Reverse as a result of a dislodged bushing. (Doc. 306, Day 5 Trial Tr. at 1057:22-1058:25.). So, at the outset, it is

- 6 -

obvious that Plaintiff's punitive damages submission focused exclusively on conduct distinct from her specific incident. *See Campbell*, 538 U.S. at 423. The corollary is that Colorado's statutory factors point decidedly against sustaining this award.

### A. Any Deterrent Effect has Already been Accomplished

The reality is that none of the conduct that could have served as the basis for the jury's punitive damages award needs to be deterred. To the extent that Plaintiff's punitive damages claim is premised on the design of the shift tube, Plaintiff concedes that Ford added the metal rib to the shift tube in 2001. (Doc. 306, Day 5 Trial Tr. at 1058:2-3.). Plaintiff contended at oral argument on Ford's Rule 50(a) motion that she was nevertheless entitled to punitive damages because "they didn't tell people." (*Id.* at 1058:4.). But an alleged failure to warn cannot form the basis for an award of punitive damages because under Colorado law "punitive damages are awardable only for viable tort claims." *Hensley v. Tri-QSI Denver Corp.*, 98 P.3d 965, 967 (Colo. App. 2004). Nor is there any "misconduct" to deter related to the C8-02 Report: a study of 1970s Ford vehicles *with different transmissions, engines, and shift control systems* and unsubstantiated customer complaints (Doc. 304, Day 3 Trial Tr. at 698:10-18) did not and could not alert Ford to any bushing issue, the defect that Plaintiff alleged existed in her 1998 Expedition. Indeed, this Court previously found that there was insufficient evidence of any fraudulent concealment or intent to conceal the alleged defect by Ford, observing that the Technical Service Bulletin ("TSB") evidence "cuts against the idea of a cover-up, because it suggests [Ford] was actually disclosing the issue, not concealing it, even if just to dealers." (Doc. 306, Day 5 Trial Tr. at 1069:4-20.). Moreover, the only evidence—not merely argument—the jury heard about the reason Ford issued the TSB was Mr. Fyie's testimony that Ford's data

showed that the bushing issue did not create a dangerous condition, but instead a customer nuisance when the ignition key could not be removed. (Doc. 305, Day 4 Trial Tr. at 761:16-19; *see also* Doc. 304, Day 3 Trial Tr. at 713:1-8.). So while Ford decided to pursue a redesign of the shift tube, "it's a lot quicker to send a TSB to a dealership, so that was the first thing we did was sent this to dealership technicians to help them."[2] (Doc. 305, Day 4 Trial Tr. at 740:19-741:5.).

There is no basis to deter Ford's conduct in this regard. Ford identified a customer satisfaction (but non-safety related) issue, and while working on a redesign, it notified dealerships of that issue and provided repair protocols. Without any conduct by Ford that needs to be deterred, this Court should disallow or reduce the punitive damages award. *See Alley v. Gubser Dev. Co.*, 785 F.2d 849, 856 (10th Cir. 1986) (holding there was an insufficient basis for punitive damages in products liability case alleging injuries from formaldehyde contained in certain building materials, where "the 'wrongful conduct' sought to be deterred is the mobile home industry's practice of constructing mobile homes with wood products containing formaldehyde," and where there was "simply no evidence" to support a finding that "the industry's use of wood products containing formaldehyde is a wanton and reckless disregard of the plaintiffs' rights . . . .").

---

[2] There was also no evidentiary showing that Ford *could have* sent Plaintiff a TSB, as she did not own the 1998 Expedition when the TSB was issued. Nor was there evidence that if Ford *had* somehow sent the TSB to consumers, that would have changed the condition of Plaintiff's vehicle, as there was no evidence it exhibited the key-removal condition described in the TSB. Because there is no evidence the TSB's distribution caused the Plaintiff's injuries, it is not conduct warranting punitive damages. *See Tri-Aspen Constr. Co. v. Johnson*, 714 P.2d 484, 487 (Colo. 1986) (an "award of exemplary damages is justified . . . when *the act causing the plaintiff's injuries* was performed with an evil intent, and with the purpose of injuring the plaintiff, or with such a wanton and reckless disregard of his rights as evidence a wrongful motive.") (citation omitted).

### B. Any Conduct Warranting Punitive Damages Ceased Long Ago

Section 13-21-102(2)(b) allows a court to disallow or reduce punitive damages where "[t]he conduct which resulted in the award has ceased." Ford no longer uses the design that formed the basis of Plaintiff's claims; indeed, that design was changed in 2000 for implementation in 2001 vehicles. (Doc. 214-5.). *Compare with Alcon v. South Pueblo Med. Investors, Ltd.*, No. 2015CV30089, 2016 Colo. Dist. LEXIS 166, at *3 (Pueblo Dist. Ct. Oct. 25, 2016) (punitive damages not reduced where "no evidence that the Defendants have made any changes to their facility and/or care of their patients.")[3]; *Dildine v. Saxon*, No. 2014CV34753, 2017 Colo. Dist. LEXIS 1250, at *22 (Denver Dist. Ct. June 8, 2017) (punitive damages not reduced where conduct did not cease until "after criminal charges were levied, restraining orders imposed, and potential civil liability [was] threatened . . . .")[4]. Again, long before this case was brought, Ford voluntarily undertook to redesign its shift tube—and not for any safety-related reason.[5]

### C. No Purpose is Served to Punish Ford Above and Beyond the Substantial Compensatory Award

---

[3] Ford diligently searched for a corresponding Westlaw citation to provide for this case, but the opinion is only available on Lexis. Ford has attached this case as Exhibit B for this Court and Counsel's convenience.

[4] Ford diligently searched for a corresponding Westlaw citation to provide for this case, but the opinion is only available on Lexis. Ford has attached this case as Exhibit C for this Court's convenience.

[5] While Colorado law is sparse on this point, Florida law utilizes a similar ceased-conduct factor in its punitive damages regime and courts applying that standard have held that where a product is no longer being sold, the relevant conduct has ceased and does not support punitive damages. *See, e.g.*, *Judge v. Knauf Gips KG*, No. 2:21-CV-889-JES-DAB, 2023 WL 7495514, at *7 (M.D. Fla. Nov. 13, 2023); *Ocasio v. C.R. Bard, Inc.,* No. 8:13-CV-1962-T-36AEP, 2020 WL 3288026, at *6 (M.D. Fla. June 18, 2020).

Lastly, the Court should disallow or significantly reduce the punitive damages award because "[t]he purpose of such damages has otherwise been served." C.R.S. § 13-21-102(2)(c). The purpose for awarding punitive damages is to punish a defendant for its acts and to deter similar conduct in the future. *See Lira*, 832 P.2d at 243. Here, Ford was adequately punished by the jury's substantial award of actual damages. *See Montgomery Ward & Co. v. Andrews*, 736 P.2d 40, 49 (Colo. App. 1987) (affirming award of $1 in punitive damages where "[t]he purpose of exemplary damages, to punish the wrongdoer . . . was served by the aggregate amount awarded, and the desired deterrent effect was accomplished by the larger awards on the conversion and trespass claims."); *Roginsky v. Richardson-Merrell, Inc*. 378 F.2d 832, 841 (2d Cir. 1967) (reversing punitive award and noting that "heavy compensatory damages, recoverable under some circumstances even without proof of negligence, should sufficiently meet the[] objectives" otherwise served by punitive damages); *Campbell*, 538 U.S. at 419 (reversing punitive award and noting, "[i]t should be presumed a plaintiff has been made whole for his injuries by compensatory damages, so punitive damages should only be awarded if the defendant's culpability, after having paid compensatory damages, is so reprehensible as to warrant the imposition of further sanctions to achieve punishment or deterrence.").

An additional $45 million in punitive damages (or even the reduced amount under the cap) is grossly excessive, where the underlying "conduct" is not of the type warranting deterrence and where the alleged design defect was redesigned over twenty years ago. Therefore, the Court should exercise its discretion under Section 13-21-102(2) and disallow or significantly reduce the punitive damages award. *Cf. Juarez v. United Farm Tools, Inc.*, 798 F.2d 1341, 1343-44 (10th Cir. 1986) (punitive damages unwarranted where defendant "did not disregard the

consequences of the danger posed by the" product).

\* \* \* \*

This Court's authority to remit excessive damages, including punitive damages, is not only guided by Section 13-21-102—though that is certainly enough to rein in the excessive and unjustified award here. But this Court also separately retains the ability to remit excessive awards. *See Mason v. Texaco, Inc*., 948 F.2d 1546, 1561 (10th Cir. 1991). That ability is especially important here where the amount of punitive damages argued for was wholly disconnected from the evidentiary record. *See also Gregory v. Chohan*, 670 S.W.3d 546, 557 (Tex. 2023) (vacating punitive damages amount for insufficient connection to the evidence and decrying closing argument driven by "unsubstantiated anchoring . . . to objects or values with no rational connection to the facts of the case," like a fighter jet or artwork).

Plaintiff's counsel anchored the request for punitive damages in amounts Ford allegedly spent on certain expert firms—alleged amounts that (1) were not limited to this case, but spanned decades and numerous dissimilar cases; and (2) were not supported by the testimony at trial. (*See* Doc. 308, Day 7 Trial Tr. at 1613:1-6.). For example, Plaintiff's counsel stated, "I think what you heard suggested in the case was that Ford would rather spend money, spend money on professional experts to fight this in court than fixing the problem in the vehicle itself. $53 million just for Carr Engineering in a ten-year period, a hundred million dollars for Ms. Harley's company." (Doc. 308, Day 7 Trial Tr. at 1584:24-1585:4.). Over Ford's objection, Plaintiff's counsel reiterated: "The point is, of all that, without getting in the weeds about if it's 155 million or 100 million, whatever the case is, it's millions and millions of dollars to fight things in court that should have been fixed at the factory. That's the point." (*Id.* at 1586:18-22; *see also id.* at

1573:21-25.). Plaintiff's counsel explicitly characterized those amounts as "benchmarks" for the jury to award punitive damages, stating:

> [T]here other benchmarks we can use. Here is one. 23 million is what Ford spent in five years to defend themselves. 53 is what they spent in ten years. . . . When you are trying to figure out what is a good punitive damages number, well, if it's 53 million over a ten-year period, that's 5.3 million a year, you say, this woman suffered seven years, so seven times 5.3 million, that's a legitimate way to do it. Maybe you say, you know what, we're going to make it more expensive for Ford to litigate than to fix it, 53 million. So I have offered that up. . . . I think the number has got to be, should be, respectfully somewhere between 23 and 53 million.

(*Id.* at 1608:14-1609:8.). The jury awarded $45 million in punitive damages, which is on the high end of Plaintiff's suggested spectrum.

These repeated references to unsubstantiated figures allegedly spent by Ford *on matters completely unrelated to the alleged defect or Plaintiff's injuries* are an improper basis for the jury to award punitive damages, especially where those alleged amounts would have been spent in furtherance of Ford's right to defend itself, not any reprehensible or "willful and wanton" conduct. *Tri-Aspen Constr. Co.*, 714 P.2d at 487 (an "award of exemplary damages is justified . . . when *the act causing the plaintiff's injuries* was performed with an evil intent, and with the purpose of injuring the plaintiff, or with such a wanton and reckless disregard of his rights as evidence a wrongful motive.") (citation omitted); *see also Campbell*, 538 U.S. at 423 (punishment must be connected to conduct that harmed this plaintiff).

\* \* \* \*

In all, no conduct by Ford requires deterrence, the jury awarded substantial actual damages, and Plaintiff's submission on punitive damages was anchored to improper considerations. The Court should exercise its discretion to disallow or substantially reduce the

- 12 -

punitive damages award.

## CONCLUSION

Colorado statutory law is clear: noneconomic and punitive damages are capped, and the Court has discretion to disallow or further reduce punitive damage awards. For the foregoing reasons, the Court must amend the judgment to reduce Plaintiff's noneconomic damages to $468,010 pursuant to C.R.S. § 13-21-102.5. Further, pursuant to C.R.S. §§ 13-21-102(1)(a) and 13-21-102(2), as well as the Court's discretion, the Court should disallow entirely or significantly reduce the punitive damages award.

Respectfully submitted,

DATE: May 16, 2024

*s/ Theresa Wardon Benz*
Theresa Wardon Benz
Kristin L. Arthur
Davis Graham & Stubbs LLP
1550 17th Street, Suite 500
Denver, CO 80201
Telephone:   303.892.9400
Facsimile:   303.892.1379
Email:   theresa.benz@dgslaw.com
             kristin.arthur@dgslaw.com

Gabrielle L. Schneiderman
Bryan D. Cross
Wheeler Trigg O'Donnell LLP
370 Seventeenth Street, Suite 4500
Denver, CO 80202-5647
Telephone:   303.244.1800
Facsimile:   303.244.1879
Email:   schneiderman@wtotrial.com
             cross@wtotrial.com

J. Randolph Bibb, Jr.
Ryan Nelson Clark
Lewis Thomason, P.C.
424 Church Street, Suite 2500
Nashville, TN 37219
Telephone: 615.259.1366
Facsimile: 615.259.1389
Email:   rbibb@lewisthomason.com
         rclark@lewisthomason.com

Sherry A. Rozell
McAfee & Taft P.C.
4050 South Fairview Avenue
Springfield, MO 65807
Telephone:   908.574.3001
Facsimile:   918.574.3101
Email:       sherry.rozell@mcafeetaft.com

*Attorneys for Defendant Ford Motor Company*

- 14 -

## CERTIFICATE OF SERVICE (CM/ECF)

I HEREBY CERTIFY that on May 16, 2024, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following email addresses:

Rodney K. Castille     rcastille@lkclawfirm.com
Bradley Landon Leger     bleger@lkclawfirm.com,
Anthony G. Buzbee     tbuzbee@txattorneys.com
Thomas Colby Holler     choller@txattorneys.com
Bradly J. Holmes     holmeslaw@comcast.net
Michael W. Blanton     mike@gerashsteiner.net

Counsel for Plaintiffs

Sherry Ann Rozell     sherry.rozell@mcafeetaft.com
John Randolph Bibb, Jr.     rbibb@lewisthomason.com,
Ryan Nelson Clark     rclark@lewisthomason.com
Gabrielle Lauren Schneiderman     schneiderman@wtotrial.com
Bryan D. Cross     cross@wtotrial.com

Counsel for Defendants

*s/ Beatriz Esparza*
Beatriz Esparza