**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 22-cv-00541-MDB

Lorelle Thompson,

    Plaintiff,

v.

Ford Motor Company, a Delaware Company,

    Defendant.

---

**FORD'S REPLY IN SUPPORT OF ITS MOTION TO ALTER OR AMEND THE
JUDGMENT UNDER F.R.C.P. 59(e) (DOC. 315)**

---

## INTRODUCTION

Nothing in Plaintiff's response warrants this Court's departure from Colorado's mandatory damages caps. Indeed, Plaintiff's response does the opposite. It drives home that her punitive damages award should be further decreased or eliminated. As set forth below, as well as in Ford's Rule 59(e) motion (Doc. 315) and in Ford's response to Plaintiff's Rule 59(e) motion (Doc. 324),[1] the Court should apply a single noneconomic cap and eliminate, or substantially reduce, punitive damages.

## ARGUMENT

### I.   Plaintiff Fails to Show That More Than One Noneconomic Cap is Justified

A trial court may only invoke the exception to the noneconomic damages cap in exceptional circumstances "if it finds justification by clear and convincing evidence to exceed the cap." *Pisano v. Manning*, 510 P.3d 572, 576 (Colo. App. 2022) (citations and quotations omitted). Plaintiff does not quibble with this standard. But she fails to show with clear and convincing evidence that the pain and suffering she experienced was beyond that expected in a typical injury case, such that she is the type of "'*seriously or desperately*' injured plaintiff[]" for whom double caps are warranted. *James v. Coors Brewing Co.*, 73 F. Supp. 2d 1250, 1253 (D. Colo. 1999) (citing *General Elec. Co. v. Niemet*, 866 P.2d 1361, 1365 (Colo. 1994)).

First, Plaintiff argues that her noneconomic damages should be increased because she endured medical procedures and her pain interferes with her daily life. (Doc. 327 at 3.) However, *Pisano* rejected the argument that medical procedures and pain, by themselves, are

---

[1] There is significant overlap between the party's arguments in their respective Rule 59(e) motions and thus Ford incorporates its response to Plaintiff's Rule 59(e) motion (Doc. 324), as Plaintiff similarly referenced in her response to Ford's Rule 59(3) motion (Doc. 316).

"exceptional." *See Pisano*, 510 P.3d at 575. *Compare Hoffman v. Ford Motor Co.*, 690 F. Supp. 2d 1179, 1181 (D. Colo. 2010) (increasing the cap on noneconomic damages because plaintiff, a teenager, was rendered a tetraplegic and "[would] never be able to live or care for herself independently" and her "life expectancy [was] appreciably truncated by her injuries."), *with Watson v. Dillon Cos.*, No. 08-cv-00091-WYD-CBS, 2013 WL 4547477, at *5 (D. Colo. Aug. 28, 2013) (distinguishing *Hoffman* because the plaintiff's injury "has not rendered him completely disabled"). Put simply, there are no "exceptional circumstances" in Plaintiff's case that warrant increasing the mandatory cap. *Pisano*, 510 P.3d at 577; *Watson*, 2013 WL 4547477, at *5; *James*, 73 F. Supp. 2d at 1253-54.

Additionally, the cases cited by Plaintiff are inapposite because they involve a different injury or a greater level of pain and suffering. *See Straughen v. BHS, Inc.,* No. 21-cv-02230-NYW-SBP, 2024 WL 1251421, *2 (D. Colo. Mar. 19, 2024) (plaintiff suffered multiple fractures, pulmonary contusions, and a spleen laceration, requiring multiple emergency surgeries); *Schwab v. Martino*, No. 05-cv-01456-MSK-MEH, 2007 WL 4522714, *4 (D. Colo. Dec. 17, 2007) (plaintiff underwent 13 surgeries over a period of two years and needed to take narcotic pain medication on a regular basis); *Sheldon v. Golden Bell Retreat*, No. 19-cv-1371-REB-NYW, 2022 WL 17818297, at *8 (D. Colo. Aug. 24, 2022) (plaintiff was a 32-year old woman whose injuries impacted her ability to earn a living and affected her plans for her young family); *Nelson v. United States*, No. 11-cv-02953-WYD-MEH, 2014 WL 1929585, at *1-2 (D. Colo. May 14, 2014) (plaintiff suffered a traumatic brain injury, vision loss, broken jaw, dental trauma, and endocrine system injury, and required 24-hour supervision following his discharge from the hospital); *Colwell v. Mentzer Invs., Inc.*, 973 P.2d 631, 639 (Colo. App. 1998) (plaintiff

had multiple sclerosis). Unlike some of the plaintiffs in those cases whose injuries impacted their ability to work, Plaintiff was able to continue to work after the accident and even got a better job. (Doc. 305, Day 4 Trial Tr. at 859:3 – 860:16.) Her injury is limited to one area of her body and does not involve other physical impairments or a disease. Moreover, Plaintiff has not committed to getting an amputation. (*Id.* at 813:16-19.) Therefore, any alleged pain and suffering resulting from an amputation is purely speculative. Indeed, the evidence showed that an amputation would relieve Plaintiff's pain. (*Id.* at 814:15-17; Doc. 303, Day 2 Trial Tr. at 350:25 - 351:3, 361:11 - 362:2), and any resulting change in her lifestyle would fall under permanent impairment damages, for which the jury awarded five million dollars. Therefore, the Court should reduce Plaintiff's noneconomic damages award to $468,010 in accordance with Colorado's mandatory statutory cap. C.R.S. § 13-21-102.5(3)(a); C.R.S. § 13-21-102.5(3)(c)(I).

## II.     C.R.S. § 13-21-102 Supports Reducing or Eliminating Punitive Damages

### A.     The Trial Evidence Supports Reduction or Elimination of Punitive Damages

Plaintiff mischaracterizes the trial testimony to convince the Court not to reduce or eliminate her punitive damages award pursuant to C.R.S. § 13-21-102. The evidence at trial proved, however, that Ford had no knowledge of an unreasonably dangerous defect in Plaintiff's 1998 Expedition. First, the evidence showed Ford only had knowledge that a worn bushing causes difficulty removing the key from the ignition, not unintended vehicle movement. (Doc. 305, Day 4 Trial Tr. at 740:15-18, 761:16-19; *see also* Doc. 304, Day 3 Trial Tr. at 712:15-23.) As Mr. Fyie explained, Ford had "no data, no evidence to say that that causes a safety concern, that bushing being out of position. It causes the concern we [Ford] have looked at, which is difficulty removing the key from the ignition, that's it." (Doc. 305, Day 4 Trial Tr. at 761:16-19;

*see also* Doc. 304, Day 3 Trial Tr. at 712:15-23.) Ford issued Technical Service Bulletins ("TSBs") to dealers to address the key issue, and then ultimately changed the design of the shift tube. If the evidence showed that the bushings would cause a dangerous condition, Ford would have recalled the vehicle. (Doc. 305, Day 4 Trial Tr. at 761:7-10.)

Second, the C8-02 Report did not alert Ford to a defect because the vehicles at issue in that investigation were manufactured in the 1960s and 1970s and were equipped with C-3, C-4, C-6, FMX, and JATCO transmissions, not the 4R70W transmission in Plaintiff's 1998 Expedition. (Plaintiff's Exhibit No. 42 at 1.) None were equipped with the same shift tube, bushings, and clamps as Plaintiff's 1998 Expedition. (Aff. of Matthew Fyie, Doc. 100-1 ¶ 12.) The fact that the C8-02 Report noted that Ford had higher rates of unintended vehicle movement than other manufacturers is also irrelevant because all of the design factors were designed out for model year 1980. (Plaintiff's Exhibit No. 42 at 17.)

Third, Plaintiff had no evidence, only attorney argument, that Ford should have issued a recall. Mr. Hannemann was not asked that question and did not offer that testimony. (Doc. 303, Day 2 Trial Tr. at 193:24-194:8, 196:3-5 (testifying that NHTSA can issue recalls and that Ford issued a recall for a *different* issue).) The *Beene* case also did not alert Ford to any danger because the way the shift system was used in *Beene* is different than the way Plaintiff engaged the shift system here. Tellingly, *Beene* did not involve a claim for punitive damages. (Doc. 316 at Ex. 4.) Thus, the undisputed evidence in this case, along with the statutory requirements under C.R.S. § 13-21-102(2), weigh against Plaintiff's grossly excessive punitive damages award.

### B.   Any Deterrent Effect Has Already Been Accomplished

Plaintiff argues that the deterrent effect of punitive damages has not been accomplished

because Ford's design change was not implemented in pre-2001 Expeditions and Ford has done nothing to eliminate the danger posed in those vehicles. As set forth above, Plaintiff's argument is contrary to the trial evidence.

Moreover, Ford has not hidden a safety issue. The evidence showed that when Ford identified a safety issue, it issued a recall.[2] (Doc. 305, Day 4 Trial Tr. at 761:7-10.) Moreover, as this Court previously found, there was insufficient evidence of any fraudulent concealment or intent to conceal the alleged defect by Ford, observing that the TSB evidence "cuts against the idea of a cover-up, because it suggests [Ford] was actually disclosing the issue, not concealing it, even if just to dealers." (Doc. 306, Day 5 Trial Tr. at 1069:4-20.) Further, none of the cases cited by Plaintiff considered whether to reduce or eliminate punitive damages under C.R.S. § 13-21-102(2). *See Bullock v. Daimler Trucks N. Am., LLC*, No. 08-cv-00491-WJM-MEH, 2011 WL 1638744, at *1-2 (D. Colo. 2011) (considering whether punitive damages claim survives summary judgment); *Vista Resorts, Inc. v. Goodyear Tire & Rubber Co.*, 117 P.3d 60, 67 (Colo. App. 2004) (considering whether other incident evidence was properly admissible to prove punitive damages); *Schmutz v. Bolles*, 800 P.2d 1307, 1311, n.8 (Colo. 1990) (observing that notice is relevant to punitive damages); *Robinson v. Audi Nsu. Auto Union Aktiengesellschaft*, 739 F. 2d 1481, 1489 (10th Cir. 1984)(considering whether statement of manufacturer was admission against interest). Nor do any of those cases involve a manufacturer who changed the

---

[2] Mr. Fyie testified that when Ford identified an issue with the steering column on 1997 and 1998 Expeditions that affected safety, it issued a recall. (Doc. 304, Day 3 Trial Tr. at 690:10-15.) The condition addressed in that recall caused a variety of potential issues including the potential of the shift system not shifting into Park when the driver selected Park using the gear shift lever (*Id.* at 690:18-19.) But this condition had nothing to do with the bushings. (*Id.* at 691:2-5.) Several of the other incidents admitted by the Court explicitly referenced this unrelated recall. (*Id.* at 691:6-692:9.) For others, the condition described may have implicated the recall. (*Id.* at 693:6-10.)

design at issue almost two decades before plaintiff's incident and who issued TSBs addressing pre-design change Expeditions. Under these circumstances, there is no argument that additional deterrence is warranted.

### C.     Any Conduct Warranting Punitive Damages Ceased Over a Decade Ago

Plaintiff largely ignores the fact that Ford issued TSBs in 1998 and 1999, and more importantly, redesigned the shift tube for model year 2001 Expeditions. This plainly establishes that the conduct underlying her punitive damages claims ceased more than a decade before she purchased her Expedition. Without citing any cases and without distinguishing the cases cited by Ford, Plaintiff nevertheless contends that Ford's conduct continued because there are still some 1998 Expeditions on the road. *Compare with Alcon v. South Pueblo Med. Investors*, *Ltd.*, No. 2015CV30089, 2016 Colo. Dist. LEXIS 166, at *3 (Pueblo Dist. Ct. Oct. 25, 2016) (punitive damages not reduced where "no evidence that the Defendants have made any changes to their facility and/or care of their patients.").[3]

In essence, Plaintiff claims that Ford was required to recall pre-2001 Expeditions, even though the evidence showed that Ford knew only of a customer nuisance issue stemming from displaced bushings and issued a TSB to address that issue. (Doc. 305, Day 4 Trial Tr. at 740:15-18, 761:16-19; *see also* Doc. 304, Day 3 Trial Tr. at 712:15-23.) Adopting Plaintiff's view would require this Court to disregard Colorado law, which "does not impose a duty [on manufacturers] to retrofit" defective products. *Romero v. Int'l Harvester Co.*, 979 F.2d 1444, 1452 (10th Cir. 1992).

Taken to its logical conclusion, Plaintiff's theory would require Ford to conduct a recall

---

[3] A copy of this decision can be found at Doc. 315, Exhibit B.

anytime it faces a lawsuit over one of its products. Further, under Plaintiff's theory that the 2011 verdict in *Beene* put Ford on notice, Ford would be required to recall 1998 Expeditions fourteen years after manufacture, even though it had already issued TSBs that addressed the bushings condition and changed the shift tube design, and NHTSA never determined a recall was warranted. What's more, particularly in the context of automobile manufacturers, Plaintiff seems to suggest that individuals (plaintiffs in lawsuits) should supplant the role and authority of NHTSA in regulating recalls. This makes no sense and Plaintiff's argument is unavailing.

### D. No Purpose is Served by Punishing Ford Above and Beyond Plaintiff's Substantial Jury Award

The purpose for awarding punitive damages is to punish a defendant for its acts and to deter similar conduct in the future. *See Lira v. Davis*, 832 P.2d 240, 243 (Colo. 1992). Plaintiff claims her actual damages are not sufficient to punish Ford for its conduct because Plaintiff experiences pain as a result of her injuries. (*See* Doc. 327 at 10.) But Plaintiff fails to show how an award of compensatory damages totaling $15,010,036.73[4] with interest is insufficient to compensate her or how such a sizeable award is insufficient to adequately punish and deter a defendant. In similar circumstances, courts have exercised discretion to eliminate (or substantially reduce) punitive damages awards. *See Montgomery Ward & Co. v. Andrews*, 736 P.2d 40, 49 (Colo. App. 1987) (affirming award of $1 in punitive damages where "[t]he purpose of exemplary damages, to punish the wrongdoer … was served by the aggregate amount awarded, and the desired deterrent effect was accomplished by the larger awards on the conversion and trespass claims."); *Roginsky v. Richardson-Merrell, Inc.*, 378 F.2d 832, 841 (2d

---

[4] This includes an award of $8,043,010 (with noneconomic damages capped at $468,010) and prejudgment interest totaling $6,967,026.73.

Cir. 1967) (reversing punitive award and noting that "heavy compensatory damages, recoverable under some circumstances even without proof of negligence, should sufficiently meet the[] objectives" otherwise served by punitive damages).

### E. The Court has Discretion to Remit Excessive Awards That are Divorced From the Evidentiary Record

This Court also separately retains the ability to remit excessive awards. *See Mason v. Texaco, Inc.*, 948 F.2d 1546, 1561 (10th Cir. 1991). This is especially important here where the amount of punitive damages awarded was wholly disconnected from the evidentiary record. *See also Gregory v. Chohan*, 670 S.W.3d 546, 557 (Tex. 2023) (vacating punitive damages amount for insufficient connection to the evidence and decrying closing argument driven by "unsubstantiated anchoring … to objects or values with no rational connection to the facts of the case," like a fighter jet or artwork). Here, Plaintiff's counsel's repeated references to unsubstantiated figures allegedly spent by Ford *on matters completely unrelated to the alleged defect or Plaintiff's injuries* were an improper basis for the jury to award punitive damages, especially where those alleged amounts would have been spent in furtherance of Ford's right to defend itself, not any reprehensible or "willful and wanton" conduct. *Tri-Aspen Constr. Co. v. Johnson*, 714 P.2d 484, 487 (Colo. 1986) (an "award of exemplary damages is justified … when *the act causing the plaintiff's injuries* was performed with an evil intent, and with the purpose of injuring the plaintiff, or with such a wanton and reckless disregard of his rights as evidence a wrongful motive." (citations and quotations omitted)); *see also State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 423 (2003) (punishment must be connected to conduct that harmed this plaintiff). Plaintiff failed to substantively address this argument in her response because there is no justification for the prejudice caused by Plaintiff's counsel's improper statements to the jury.

Therefore, Plaintiff's punitive damages award was anchored on improper considerations and should be disallowed entirely or significantly reduced.

### F. At Minimum, Plaintiff's Punitive Damages Award Should be Reduced to a One-to-One Ratio with Actual Damages

A one-to-one ratio is the *maximum* amount of punitive damages that a court can award. *Lira*, 832 P.2d at 243; C.R.S. § 13-21-102(1)(a). So, at a minimum, the Court should exercise its discretion and reduce Plaintiff's punitive damages award to an amount equal to actual damages. *See, e.g.*, *Palmer v. Diaz*, 214 P.3d 546, 555-56 (Colo. App. 2009) (reducing jury's award of $1,500,000 in punitive damages to the $300,000 awarded in actual damages); *Watson*, 2013 WL 4547477, at *7.

Certainly, punitive damages should *not* be increased under C.R.S. § 13-21-102(3)(a) as Plaintiff requests. As set forth in more detail in Ford's response to Plaintiff's Rule 59(e) motion (Doc. 324), Courts have regularly rejected arguments to increase punitive damages in cases where, like here, the conduct at issue had ceased. *Eurpac Serv. v. Republic Acceptance Corp.*, 37 P.3d 447, 453 (Colo. App. 2000); *Watson*, 2013 WL 4547477, at *6-7; *Mills v. Kindvall*, No. 2015CV030075, 2016 WL 6106789, at *1 (Colo. Dist. Ct. May 10, 2016); s*ee also Tian v. Newmont Int'l Servs.*, No. 12-cv-02515-JLK, 2016 WL 660110, at *3-4 (D. Colo. Feb. 18, 2016) (trial court declined to increase punitive damages under C.R.S. § 13-21-102(3)(a) because there was no continuation of the behavior which was the subject of the claim). Like the defendant in *Watson* who was no longer using diacetyl, *see* 2013 WL 4547477, at *7, Ford stopped using the shift tube design in Plaintiff's 1998 Expedition decades before she brought her case. For similar reasons, Plaintiff's reliance on *Blood v. Qwest Servs. Corp.* is also misplaced. (Doc. 327 at 4.) Unlike the defendant in *Blood* who took no steps to address the dangerous condition underlying

the action, Ford voluntarily changed the design of the shift tube, despite the determination that there was no dangerous condition. All of this took place decades before Plaintiff brought this lawsuit. (Doc. 306, Day 5 Trial Tr. at 1058:2-3; Doc. 305, Day 4 Trial Tr. at 761:16-19, 742:20-24; *see also* Doc. 304, Day 3 Trial Tr. at 712:15-23; Doc. 214-5.) Plaintiff did not prove that Ford continued to use this shift tube "during the pendency of the case" as required by Section 13-21-102(3).

Even if the Court finds that Plaintiff somehow established the criteria required under C.R.S. § 13-21-102(3)(a), the Court retains discretion to reject increased punitive damages, particularly where the conduct that continued through litigation did not harm Plaintiff. *See Netquote, Inc. v. Byrd*, No. 07-cv-00630-DME-MEH, 2009 WL 902437, at *16 (D. Colo. Apr. 1, 2009). Here, Ford no longer uses the allegedly defective shift tube (and stopped in 2000), and there is absolutely no evidence to show that failing to recall pre-2001 model year Expeditions during the pendency of this case—the only action that could remedy Ford's conduct according to Plaintiff—could possibly have harmed Plaintiff or anyone else during the pendency of this case. Plaintiff has not met her burden to prove beyond a reasonable doubt that she is entitled to increased punitive damages.

## CONCLUSION

For these reasons, and those set forth in Ford's motion, Plaintiff's noneconomic damages should be reduced to a single cap of $468,010 and her punitive damages award eliminated. Alternatively, at maximum, Plaintiff is only entitled to recover punitive damages in an amount equal to Plaintiff's actual damages pursuant to C.R.S. § 13-21-102(1)(a).

Respectfully submitted,

DATE: July 18, 2024

*s/ Theresa Wardon Benz*
Theresa Wardon Benz
Davis Graham & Stubbs LLP
1550 17th Street, Suite 500
Denver, CO 80201
Telephone:   303.892.9400
Facsimile:   303.892.1379
Email:   theresa.benz@dgslaw.com

Gabrielle Lombardi
Bryan D. Cross
Wheeler Trigg O'Donnell LLP
370 Seventeenth Street, Suite 4500
Denver, CO 80202-5647
Telephone:   303.244.1800
Facsimile:   303.244.1879
Email:   lombardi@wtotrial.com
            cross@wtotrial.com

J. Randolph Bibb, Jr.
Ryan Nelson Clark
Lewis Thomason, P.C.
424 Church Street, Suite 2500
Nashville, TN 37219
Telephone: 615.259.1366
Facsimile: 615.259.1389
Email:   rbibb@lewisthomason.com
            rclark@lewisthomason.com

Sherry A. Rozell
McAfee & Taft P.C.
4050 South Fairview Avenue
Springfield, MO 65807
Telephone:   908.574.3001
Facsimile:   918.574.3101
Email:          sherry.rozell@mcafeetaft.com

*Attorneys for Defendant Ford Motor Company*

## **CERTIFICATE OF SERVICE (CM/ECF)**

       I HEREBY CERTIFY that on July 18, 2024, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following email addresses:

Rodney K. Castille     rcastille@lkclawfirm.com
Bradley Landon Leger     bleger@lkclawfirm.com,
Anthony G. Buzbee     tbuzbee@txattorneys.com
Thomas Colby Holler     choller@txattorneys.com
Bradly J. Holmes     holmeslaw@comcast.net
Michael W. Blanton     mike@gerashsteiner.net

Counsel for Plaintiffs

Sherry Ann Rozell     sherry.rozell@mcafeetaft.com
John Randolph Bibb, Jr.     rbibb@lewisthomason.com,
Ryan Nelson Clark     rclark@lewisthomason.com
Gabrielle Lauren Lombardi     lombardi@wtotrial.com
Bryan D. Cross     cross@wtotrial.com

Counsel for Defendants

                                                  *s/ Beatriz Esparza*